Dan LINNEMEIER, Patricia C. Corbat, Steve & Glenna Jehl, Ben & Rita Clemmer, Tom & Rosie O'Grady, Regina Martin, Francisco Carlos Avila, Jon Olinger, Senator Kent Adams Representative James Atterholt Representative James Buck Representative Charles Burton Representative Robert Cherry Representative Jerry Denbo Representative Jeffrey Espich Representative Ralph Foley Senator David Ford Representative David Frizzell Senator Steve Johnson Representative Dean Mock Senator Johnny Nugent Representative Brent Steele Representative Jeffrey Thompson Representative Jerry Torr Senator John Waterman Senator Harold Wheeler Representative, Matthew Whetstone Representative David Wolkins, and Senator R. Michael Young, Plaintiffs,

v.

INDIANA UNIVERSITY—PURDUE UNIVERSITY FORT WAYNE, and Michael J. Birck, Barbara Edmondson, John A. Edwardson, Lewis W. Essex, John D. Hardin, Jr., J. Timothy McGinley, D. William Moreau, Jr., Mamon M. Powers, Jr., Ms. Amanda S. Teder, and W. Wayne Townsend, as members of the Board of Trustees of Purdue University Defendants.

No. 1:01–CV–0266.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

July 20, 2001.

John R. Price, Bruce A. Stuard, John R. Price and Associates, Indianapolis, IN, for Plaintiffs.

Anthony S. Benton, Stephen R. Pennell, Barry L. Loftus, Stuart and Branigin, Lafayette, IN, for Defendants.

Kenneth J. Falk, Sean C. Lemieux, Indianapolis, IN, for Intervenor Defendant.

## MEMORANDUM OF DECISION AND ORDER

WILLIAM C. LEE, Chief Judge.

Presently before the court are the Defendants' motions to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) and for failure to state a claim for relief pursuant to Fed. R.Civ.P. 12(b)(6) filed on July 11, 2001. The Court expedited the briefing schedule on these motions and, in accordance with that schedule, the Plaintiffs' responded to the Defendants' motions on July 16, 2001. The court held an evidentiary hearing on these motions as well as Plaintiffs' motion for preliminary injunction on July 17, 2001. Following the evidentiary hearing, the court heard oral argument on the evidence and law. This Order resolves only the Defendants' motions to dismiss. In a separate Order entered simultaneously herewith is the court's opinion relating to the Plaintiffs' Request for a Preliminary Injunction.

For the following reasons, the Defendants' motions to dismiss will be GRANTED in part and DENIED in part.

### FACTUAL BACKGROUND [1]

The Plaintiffs, eleven residents and taxpayers of the state of Indiana and twenty-one members of the Indiana General Assembly (hereafter, "the Plaintiffs") filed suit against the Defendants, Indiana University—Purdue University Fort Wayne ("IPFW") and ten members of the Board of Trustees of Purdue University ("the Board") (collectively, "the Defendants") pursuant to 42 U.S.C. § 1983 alleging that the Defendants will violate the Establish-

---

**1.** The parties have stipulated a large portion of the facts pertinent to this discussion. This factual recitation is based upon the Plaintiffs' Complaint and its attachments, the Defendants' motion to dismiss and affidavits in support, and the facts set forth at the Preliminary Injunction hearing. Only the facts pertinent to the present motions to dismiss have been set forth herein.

ment Clause of the United States Constitution if they are not enjoined from presenting playwright Terrence McNally's play *Corpus Christi* (hereafter "the Play") on August 10, 2001 at the Studio Theater located in Kettler Hall on IPFW's campus.[2]

The Play's protagonist is Joshua, a young gay man from South Texas, who is surrounded by his disciples, a group of twelve gay men. Each disciple takes the name of one of the historical disciples of Christ in the New Testament of the Bible. According to the Plaintiffs' interpretation of the Play, "Joshua faces many of the challenges and circumstances confronted by Christ in the New Testament." (Brief in Support, p. 2).

In their Complaint, the Plaintiffs allege that the Play is an "undisguised attack on Christianity and the Founder of Christianity, Jesus Christ," and thus, the performance of the Play in a publicly funded, taxpayer owned educational facility such as IPFW violates the separation between church and state as required by the Establishment Clause.[3] The Complaint sets forth four and a half pages of alleged hostile references to Christianity.[4]

The Plaintiffs assert that Kettler Hall is a publicly owned facility funded by taxpayers out of IPFW's operating budget, that the cost of utilities and "for other appurtenant and affiliated costs involved with the presentation" of the Play are funded by taxpayer dollars, and that taxpayer dollars pay the salary of the Chairman of the Theater Department, Larry Life ("Life"), who Plaintiffs contend has arranged the production, given public statements as to his involvement in the Play, and is "widely perceived in the public media as a public employee who has more than active involvement in the presentation of the Play." (Complaint, ¶ 20).

Several plaintiffs testified at the hearing that they have altered their day-to-day affairs as a result of the proposed performance of the Play. Plaintiff, Dan Linnemeier, for instance, claims that he is required to go to the County Extension Office located on IPFW's campus for his job and that he refuses to go onto campus because of the hostile environment toward Christians engendered by the Play. He also testified that he and his wife attended gardening shows at IPFW but will no longer do so because of IPFW's decision to produce the Play. Plaintiffs Jehl, Corbat, and Olinger claim that they will refuse to fund their children's or other close relatives' higher education costs if those

---

**2.** Jonathan Gilbert is a senior at IPFW majoring in theater with an emphasis in directing. For his senior project, Gilbert selected the Play with permission from IPFW faculty and plans (unless enjoined from doing so) to direct its performance at the IPFW Studio Theater. Gilbert moved to intervene in this action but this motion was denied by the undersigned on July 12, 2001.

**3.** Plaintiffs also assert a second claim for a violation of Indiana's Constitutional provisions, Article I, Section IV which is addressed in the latter portion of this Order.

**4.** The Plaintiffs, of various Christian denominations, also aver as follows: "[T]he Christ I believe in was turned in *Corpus Christi* into a non-divine person, which is completely contrary to the Savior I know personally, and from Holy Scripture. I am personally sickened and offended by the words and actions used in this play to portray my Savior" (Affidavit of Patricia Corbat, ¶ 5); "*Corpus Christi* ... is offensive to me as a Christian. It portrays Jesus Christ, the Founder of Christianity, as an evil, sinful man, and in all ways is contrary to the historical record of Jesus set forth in the Bible." (Affidavit of Dan Linnemeier, ¶ 4); "*Corpus Christi* is a slap in the face of Christians and those who revere and worship Christ." (*Id.* at ¶ 6); "The play is a direct attack on the basic tenets of Christianity, portrays Jesus as a liar, blasphemer, as sexually active and who disclaims His own deity." (Affidavit of Glenna Jehl, ¶ 4).

children or relatives choose to attend IPFW. Finally, Plaintiff Francisco Carlos Avila asserts that as a result of the Play he has written a letter to the John Purdue Club, an organization affiliated with Purdue University, indicating that he will no longer contribute to that organization because of the Play. Given this interspersing of state tax revenue with the Play and the fact that they must alter their lives to avoid the alleged state sponsored religious attack on Christianity, Plaintiffs claim that an Establishment Clause violation exists.

In addition to these facts, the parties filed a joint stipulation addressing the following facts: Purdue University is a state educational institution of higher learning created by and existing under various Indiana statutes. The Trustees of Purdue University ("Trustees") is a statutory body corporate created by and existing under Indiana law, charged by Indiana law with the responsibility for operating Purdue University. Pursuant to statute, the Trustees are managed by the Board. IPFW is a joint regional campus of Indiana University, a state educational institution of higher learning, and Purdue University, and is managed and operated by Purdue pursuant to a written agreement between the trustees of both Indiana and Purdue Universities. (Joint Stipulations, ¶¶ s 1–4)

Each biennium, the Indiana General Assembly makes a specific appropriation to the Trustees for the express purpose of funding operations at IPFW. IPFW, in addition, receives revenues through fees approved by the Board, gifts, and miscellaneous other sources. These sources of IPFW revenue, including the appropria-

tion from the Indiana General Assembly are combined into an operating budget that is approved annually by the Board. (Joint Stipulation, ¶ 5). The operating budget is eventually supplied to IPFW officials for use in varying ways on the IPFW campus.[5] Typical expenditures from the operating budget include utilities for campus buildings, security for campus events, and salaries for faculty and staff members. (Joint Stipulation, ¶ 6, ¶ 14).

IPFW also maintains Student Activity Funds which are not part of the operating budget. These Student Activity Funds are generated through an activity fee charged to students. Aside from the salaries for Theater Department employees and the utilities for the various building utilized by the IPFW Theater Department paid out of the operating budget, all costs associated with IPFW Theater Productions are paid for by either the Student Activity funds or through gift funds. (Grote Affidavit, ¶¶ 4,5).

### DISCUSSION

*Motion to Dismiss for lack of jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1)*

Defendants characterize their motion to dismiss as a motion pursuant to Fed. R.Civ.P. 12(b)(1) attacking the subject matter jurisdiction of the court. "When a plaintiff lacks standing to bring suit, a court has no subject matter jurisdiction over the case." *In re United States Catholic Conference*, 885 F.2d 1020, 1023 (2d Cir.1989); *Simmons v. Interstate Commerce Commission*, 900 F.2d 1023, 1026 (7th Cir.1990) ("If the petitioners have no standing, there is no case or controversy, and the court does not have the power to

---

**5.** The parties advise that once the Board receives funds from the state legislature it, in turn, delegates the power to spend monies from the operating budget to the President of Purdue University, who, in turn, delegates

that power to the Chancellor of IPFW. After it delegates the spending authority for IPFW, the Trustees do not participate in the day-to-day decision-making process regarding individual fund expenditures.

entertain the case under Article III of the Constitution.").

At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct are sufficient to overcome a motion to dismiss, for on a motion to dismiss the court presumes that 'general allegations embrace those specific facts that are necessary to support the claim.'" *Doe v. County of Montgomery*, 41 F.3d 1156, 1159 (7th Cir.1994)(citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). However, case authorities also recognize that "[a] court may treat a motion to dismiss as one for summary judgment, thereby requiring that a plaintiff provide affidavits supporting factual allegations made in the complaint. Disputed factual issues may be resolved at a pretrial evidentiary hearing or during the course of trial." *Bischoff v. Osceola County, Fla.*, 222 F.3d 874, 878 (11th Cir.2000). Indeed, when faced with standing issues, courts are required to hold an evidentiary hearing to determine disputed factual issues. See *Martin v. Morgan Drive Away, Inc.*, 665 F.2d 598 (5th Cir.1982); *Steele v. National Firearms Act Branch*, 755 F.2d 1410 (11th Cir.1985); *Munoz–Mendoza v. Pierce*, 711 F.2d 421 (1st Cir.1983). That is what occurred in this case and thus, the court considers the evidence presented at the hearing along with the additional documentation submitted by the parties.

We begin with the general notion that the standing requirement in Article III "'is not merely a troublesome hurdle to be overcome if possible so as to reach the 'merits' of a lawsuit,' but an integral part of the governmental charter established by the Constitution." *ACLU–NJ v. Township of Wall*, 246 F.3d 258 (3d Cir.2001) (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 474, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982)). Under Article III of the Constitution, a party must demonstrate standing in order to satisfy the "case or controversy" requirement necessary to the exercise of our judicial power. *Simmons v. Interstate Commerce Commission*, 900 F.2d 1023, 1026 (7th Cir.1990), cert. denied, 499 U.S. 919, 111 S.Ct. 1308, 113 L.Ed.2d 242 (1991). The standing inquiry demands a three-part showing: "(1) the party must personally have suffered an actual or threatened injury caused by the defendant's allegedly illegal conduct, (2) the injury must be fairly traceable to the defendant's challenged conduct, and (3) the injury must be one that is likely to be redressed through a favorable decision." *Id.* (quoting *Valley* 454 U.S. at 472, 102 S.Ct. 752). Plaintiffs bear the burden of establishing standing, and each element must be supported by more than unadorned speculation. *Plotkin v. Ryan*, 239 F.3d 882, 885 (7th Cir.2001). Here, the dispute centers on the first element: whether the plaintiffs suffered an injury in fact by the proposed performance of the Play on government property.

To allege adequately an injury in fact, a plaintiff must show "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." See *Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130. Indeed, "[n]o plaintiff has standing 'to complain simply that their government is violating the law.'" *Cato v. United States*, 70 F.3d 1103, 1109 (9th Cir.1995). Likewise, "[a] generalized injury shared by the plaintiff with the public at large is insufficient to create a concrete 'case or controversy' over which a federal court may exercise its jurisdiction." *Ernst v. Child & Youth Services*, 108 F.3d 486, 499–500 (3d Cir.1997). Even where convictions are sincerely held, as is clearly the fact in the present case, the lack of a personal

stake in the outcome of the case condemns any claim of government misconduct. *See Fishbeck v. North Dakota*, 115 F.3d 580, 580 (8th Cir.1997) ("[The Plaintiffs'] convictions are sincere, and they are knowledgeable on the subject, but they have no personal stake in the outcome of this case ... They are simply interested in the subject as a matter of public policy. This sort of interest is not sufficient to create a case or controversy."). Plaintiffs must identify a "personal injury suffered by them as a consequence of the alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees." *Valley Forge*, 454 U.S. at 485, 102 S.Ct. 752.

■ Standing to assert an Establishment Clause claim may rest either on the plaintiff's direct exposure to the challenged activity, see, e.g., *School District of Abington v. Schempp*, 374 U.S. at 224 n. 9, 83 S.Ct. 1560, 10 L.Ed.2d 844 (students attending a public school, and their parents, have standing to challenge a program of Bible reading in the school because they are "directly affected by the laws and practices against which their complaints are directed"), or, in certain situations, on the plaintiff's status as a taxpayer, see, e.g., *Flast v. Cohen*, 392 U.S. 83, 103–04, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); *Doremus v. Board of Education*, 342 U.S. 429, 433–35, 72 S.Ct. 394, 96 L.Ed. 475 (1952). Each of the individual plaintiffs, including the twenty-one members of the General Assembly, allege taxpayer standing as taxpayers of the State of Indiana.[6] In addition, Plaintiffs Linnemeier, Glenna Jehl, Olinger, Avila, and Corbat, claim standing because they have been exposed to the challenged activity causing them to alter their normal behavior. The plain-

tiffs' brief focuses more on the issue of taxpayer standing and it is with that proposition the court shall begin its discussion.

The seminal case addressing taxpayer standing in the context of an alleged Establishment Clause violation is *Doremus v. Board of Education*, 342 U.S. 429, 72 S.Ct. 394, 96 L.Ed. 475 (1952). There, the Supreme Court recognized that a municipal taxpayer may possess standing to litigate "a good-faith pocketbook action." *Id.* at 434, 72 S.Ct. 394. The plaintiffs in *Doremus* were state and municipal taxpayers who challenged a state law mandating Bible reading in public schools. *Id.* at 430–31, 433, 72 S.Ct. 394. The Supreme Court found that the plaintiffs failed to establish a direct monetary injury that would confer standing to raise such a challenge, as they did not allege that the Bible reading was "supported by any separate tax or paid for from any particular appropriation or that it adds any sum whatever to the cost of conducting the school." *Id.* at 433, 72 S.Ct. 394. Likewise, the plaintiffs failed to provide any "information ... as to what kind of taxes" they paid or to aver "that the Bible reading increase[d] any tax they [did] pay or that as taxpayers they are, will, or possibly can be out of pocket because of" the activity. *Id.* In short, the plaintiffs failed to establish more than a potential de minimis drain on tax revenues due to the challenged reading. *See id.* at 431–32, 72 S.Ct. 394. As a result, the plaintiffs lacked standing to sue.

Since *Doremus*, the same result has obtained in other cases. See *ACLU–NJ v. Township of Wall*, 246 F.3d 258 (3d Cir. 2001) (municipal taxpayers and civil liberties association had no standing to challenge holiday display because they failed to establish the township spent money ob-

6. Some of the Plaintiffs also allege standing based upon being taxpayers of the city of Fort Wayne.

tained through property taxes on the religious elements of the display or that maintenance costs were more than *de minimis*); *Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 794 (9th Cir.1999) (en banc) (noting that "the school's expenditures for teachers' salaries, equipment, building maintenance, and the like were insufficient to confer taxpayer standing [in *Doremus*] despite their indirect support of the Bible reading"); *Doe v. Duncanville Indep. Sch. Dist.*, 70 F.3d 402, 408 (5th Cir.1995) (plaintiffs failed to show that the defendant school district spent any money on the distribution of Bibles by the Gideon Society in public school); *Gonzales v. North Township*, 4 F.3d 1412, 1416–17 (7th Cir.1993) (taxpayer standing denied where plaintiffs failed to show that tax revenue is spent for the crucifix or its maintenance or that maintenance expenses for the park areas surrounding the crucifix wouldn't have been spent regardless of the presence of the crucifix); *Freedom From Religion Foundation, Inc. v. Zielke*, 845 F.2d 1463, 1466 (7th Cir.1988) (plaintiffs had no taxpayer standing to enjoin the display of a monument of the Ten Commandments in a park owned and maintained by the defendant city since no showing that tax liability increased because of monument).

Plaintiffs blanketly assert in their brief that the "maintenance of this theater, as well as the lighting for the play, the advertisement for the play and any supplies needed for the performance of the play will be procured through the expenditure of tax money." (Brief in support of Preliminary Injunction, p. 4). The plaintiffs further reference the fact that the Theater Department Chairman's salary is paid out of public funds over a twelve month period and to the extent he is expending paid time and effort on the Play (as a faculty advisor to Gilbert) he is impermissibly endorsing the viewpoint of the Playwright.

In response to these allegations, the Defendants submit evidence indicating that taxpayer dollars are funneled into a general fund operating budget which, as Plaintiffs' argue, pays the salary of IPFW faculty and the utilities of buildings on IPFW's campus. (Affidavit of Philip Grote, ¶ 4; Joint Stipulation, ¶ 6). Defendants also provide affidavit testimony from Grote that all other costs associated with Theater Department productions are paid from either "Student Activity Funds, gift funds, or income-producing funds, none of which are part of the General Fund." Grote Affidavit, ¶ 5. The record further reflects that the student seeking to direct this Play privately raised $3,000 to pay for scripts and royalties and that a private donor has offered to foot the bill for two county police officers to provide security at the Play's six performances.

Plaintiffs have produced no evidence to counter these assertions but simply maintain that the use of taxpayer dollars to pay for utilities for the Play, the fact that Kettler Hall was built with taxpayer funds, and that IPFW will incur some of the security expenses out of the operating fund weighs in favor of taxpayer standing. Unfortunately for the Plaintiffs, the case authorities belie this assertion.

In *Doe v. Madison School District*, for instance, the plaintiffs, mother and daughter, brought an Establishment Clause challenge to a school district's policy of permitting student prayers at high school graduations. After a thorough review of *Doremus* and its progeny, the court determined that the plaintiffs lacked standing:

> Doe identifies no tax dollars that defendants spent solely on the graduation prayer, which is the only activity that she challenges. In fact, Doe acknowledges affirmatively that "[t]he prayers ... cost the state no additional expense." Doe instead alleges that defendants spent tax dollars on renting a hall,

printing graduation programs, buying decorations, and hiring security guards. But those are ordinary costs of graduation that the school would pay whether or not the ceremony included a prayer. Therefore, those expenditures cannot establish taxpayer standing. This case is legally indistinguishable from Doremus, in which the school's expenditures for teachers' salaries, equipment, building maintenance, and the like were insufficient to confer taxpayer standing despite their indirect support of the Bible reading.

*Doe,* 177 F.3d at 794; *see also Friedmann v. Sheldon Community Sch. Dist.,* 995 F.2d 802, 803 (8th Cir.1993) (Plaintiffs have made no allegation that the state is spending money for religious purposes. They have not shown any state money going to the invocation or benediction, which is what they contend violates the Establishment Clause. They have shown no more than that state money is spent for diplomas, which certainly is not objectionable under the Establishment Clause.)

■■■ As was the case in *Doe,* this court finds this case legally indistinguishable from *Doremus* and its progeny. The plaintiffs have asserted and provided evidence of only four facts: (1) Kettler Hall is a taxpayer built building maintained by IPFW through taxpayer funds; (2) utilities for the Studio Theater are paid from the operating fund; (3) funding for campus security occasioned by the Play will come from the operating fund; and (4) the salary of IPFW faculty member Larry Life ("Life") comes from the operating fund. Some of these costs, such as Life's salary and the building and maintenance of Kettler Hall, are clearly costs that IPFW would have spent regardless of the content or production of the Play. *See Gonzales,* 4

F.3d at 1414 (finding that the plaintiffs' claim is "undercut by their inability to show that tax revenue is spent for the crucifix" and " although Township funds are spent maintaining the Park areas surrounding the crucifix, this cost would be incurred with or without the presence of the crucifix."). Indeed, it is not alleged that taxpayer funds were expended to build Kettler Hall especially for this Play.

With respect the cost of utilities in the Studio Theater as well as the cost of campus security during the six days of the Play's performance the court finds there has been no evidence suggesting that these would be but a *de minimis* drain on tax revenues and cannot, without more, provide the plaintiffs with taxpayer standing. *Id.* at 431, 72 S.Ct. 394; *see also ACLU–NJ,* 246 F.3d at 264 ("we cannot simply assume that the Township expends more than a de minimis amount in lighting the religious elements of the display."). Moreover, the court has no evidence before it that the cost of the overall utility budget for the Theater Department has increased as a result of this Play or that a different play would not have been performed (thereby resulting in a similar utilities expenditure) if the present one were not scheduled. "There is no allegation that this activity is supported by any separate tax or paid for from any particular appropriation or that it adds any sum whatever to the cost of conducting the school." *Doremus,* 342 U.S. at 431, 72 S.Ct. 394. Thus, the court concludes that Plaintiffs have failed to meet their burden to establish standing as taxpayers to assert an Establishment Clause violation. Accordingly, the members of the Indiana General Assembly are hereby DISMISSED from this case for they have alleged no injury in fact other than their status as taxpayers.[7]

---

7. Two plaintiffs who are members of the General Assembly provided testimony at the preliminary injunction hearing, but neither indicated that they had come into any direct or unwelcome contact with the Play or that they altered any behavior to avoid coming into

In addition, individual plaintiffs, Tom and Rosie O'Grady, Ben and Rita Clemmer and Regina Martin are likewise DISMISSED for the same reason.

The dismissal of these plaintiffs notwithstanding, the remaining Plaintiffs may establish standing by demonstrating that the Plaintiffs have suffered an injury in fact from the display of a religious object or message. For instance, "the individual may show he has undertaken a special burden or has altered his behavior to avoid the offensive object." *Books v. City of Elkhart, Indiana,* 235 F.3d 292, 299 (7th Cir.2000) (citing, e.g., *Freedom from Religion Found. Inc. v. City of Marshfield Wisconsin,* 203 F.3d 487, 489 (7th Cir. 2000) (avoids using the park); *Gonzales v. North Township,* 4 F.3d 1412, 1416–17 (7th Cir.1993) (avoids area of the park); *Harris v. City of Zion,* 927 F.2d 1401, 1405 (7th Cir.1991) (alters travel routes); *Doe v. Village of Crestwood,* 917 F.2d 1476, 1478 (7th Cir.1990) (will stay away from festival); *American Civil Liberties Union v. City of St. Charles,* 794 F.2d 265, 269 (7th Cir. 1986) (alters behavior by detouring); *Doe v. Small,* 726 F.Supp. 713, 718–19 (N.D.Ill. 1989), rev'd en banc on other grounds, 964 F.2d 611 (7th Cir.1992) (avoids using park)).

▮▮▮ It goes without saying that each of the remaining Plaintiffs object to the viewpoint of the Play as hostile to their particular religious beliefs and offensive to the personal way in which they conduct their lives. However, "offense to moral and religious sensitivities does not constitute an injury in fact and is insufficient to confer standing." *Gonzales v. North Township of Lake County Indiana,* 4 F.3d 1412 (7th Cir.1993). "Rather, the plaintiff must 'incur a tangible, albeit small cost that validates the existence of genuine distress and warrants the invocation of federal jurisdiction.'" *Id.* at 1414 (quoting *Harris v. City of Zion,* 927 F.2d 1401, 1406 (7th Cir.1991)). This small cost may be in the form of "an identifiable trifle." *United States v. Students Challenging Regulatory Agency Procedures (SCRAP),* 412 U.S. 669, 689 n. 14, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973).

Plaintiffs assert that they have incurred a tangible cost by altering their behavior because of the possible performance of the Play. Plaintiff Linnemeier states that he avoids the County Extension Office on IPFW's campus which he must regularly use as part of his employment because of the hostility on the IPFW campus toward Christians caused by the Play. He and his wife likewise will avoid attending some gardening shows/activities held on campus that they would normally attend because of the Play. Plaintiff Francisco Carlos Avila states that he has stopped contributing to an organization affiliated with Purdue University because he believes the University, by producing the Play on campus, is impermissibly attacking his Roman Catholic faith. Finally, Plaintiffs Jon Olinger,[8] Patricia Corbat and Glenna Jehl (and presumably her spouse who is also a plaintiff) claim that the Play's intended performance has caused them to reconsider prior decisions that they had made to fund some or all of certain family member's higher education. In addition, Corbat testified that she attended IPFW previously and that

contact with the Play. Thus, the record stands void of any allegations other than the fact that the legislators, as a whole, claim taxpayer status.

8. Olinger, who is president of the Fort Wayne Community School Corporation, also testified that he would think twice before engaging in activities with IPFW's campus and particularly, the Theater Department, because of the Play. The court does not, however, believe this to be sufficient to confer standing because these allegations again fail to demonstrate a particularized or an actual or imminent injury.

she will "never step foot on [IPFW's] campus again." [9]

 A review of the applicable cases on this point inform the court that these allegations are sufficient to confer standing for several of these plaintiffs, but not all of them. Corbat, Jehl, and Olinger have all failed to show an "actual or imminent" injury that is more than speculative. None allege that they have actually discontinued college funding for any family member in anticipation of the Play. Rather, these plaintiffs assert that their family members might, at some unspecified time in the future, choose to attend IPFW's campus and that they would not pay tuition for that family member because they believe the campus is hostile to their respective religions. Indeed, there is no evidence that any of their family members have even applied to IPFW.[10] Thus, there is no actual or imminent injury to these plaintiffs. *See Doe v. County of Montgomery, Illinois,* 41 F.3d at 1161 (attorney alleging that his ability to practice law had been impeded had no standing where he failed to allege that he refused to represent any client because of the religious sign and failed to identify any case which has required, or will require, his presence in the courthouse).

 However, the same cannot be said for Linnemeier and Avila. Both plaintiffs allege a particularized and "actual or imminent" threat to their interests as a result of the Play and an actual alteration of their normal behavior as a result of the challenged activity. *See Zielke,* 845 F.2d at 1468–69 (concluding no standing where plaintiffs neither altered their behavior as a result of the challenged activity nor were they exposed to the monument during their normal routines or in the course of their usual driving or walking routes). Thus, these two plaintiffs have established an "injury in fact" sufficient to provide them with standing.

 This leaves the Court with Corbat's additional testimony that she has attended IPFW's campus in the past but she will never do so again. While the court has some doubt that this assertion is sufficiently particularized to permit a claim of "actual or imminent" injury, there is some support in the case law for the claim that avoidance of the entire campus is an actual injury. *See Doe v. Village of Crestwood,* 917 F.2d 1476 (plaintiff avoided entire festival because of mass occurring inside one tent). Thus, the court concludes that Corbat has standing to assert an Establishment Clause violation.

In sum, the court concludes that all of the plaintiffs but for Linnemeier, Corbat and Avila must be dismissed based upon lack of standing. Accordingly, Defendants' motion to DISMISS for lack of jurisdiction is GRANTED as to the twenty-one Indiana General Assembly members, Steve and Glenna Jehl, Ben and Rita Clemmer, Tom and Rosie O'Grady, Regina Martin, and Jon Olinger. The motion is DENIED as to Dan Linnemeier, Patricia Corbat and Francisco Carlos Avila.

### Motion to Dismiss pursuant to Fed. R.Civ.P. 12(b)(6)

 In their second motion to dismiss, the Defendants claim that the Plaintiffs

---

9. At oral argument, Defendants' counsel indicated that these alterations of behavior were "self-inflicted" injuries and that the Plaintiffs voluntarily chose to change their behavior. This may be true, however, it has no bearing on the legal question presented to the court which is whether the Plaintiffs' have demonstrated an injury sufficient to confer standing.

10. Olinger's child, for instance, is in the seventh grade and Corbat's six nieces and nephews for whom she plans to provide college funding range in ages from 8 to 19. Moreover, Jehl's son, who is 21, is presently out of the country and will not be applying for graduate school until he returns in about a year.

fail to state a claim for relief because they have not sued "persons" as is required under 42 U.S.C. § 1983. Plaintiffs name IPFW and the individual members of the Board of Trustees of Purdue University in their official capacity. Defendants claim that IPFW is not a proper party to be sued because it is not a body corporate capable of suing in its own name or being sued under Indiana's statutes. Plaintiffs have not disputed this fact in either their brief or at oral argument. Thus, the court hereby DISMISSES IPFW from this case as it is not a proper entity to be sued.

Next, Defendants claim that individual members of the Board of Trustees of Purdue University are not "persons" under § 1983 since they are being sued in their official capacities which makes them an arm of the State of Indiana. It is clear that section 1983 does not authorize suits against states. *See Power v. Summers*, 226 F.3d 815, 818 (7th Cir.2000); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), *Higgins v. Mississippi*, 217 F.3d 951, 953 (7th Cir. 2000). Suits against state officials in their official capacities are suits against the "state" and are prohibited under § 1983. *Arizonans for Official English v. Arizona*, 520 U.S. at 69, 117 S.Ct. 1055.

However, official-capacity suits against state officials that seek only injunctive relief are permitted by 42 U.S.C. § 1983. *Will*, 491 U.S. at 71 n. 10, 109 S.Ct. 2304, 105 L.Ed.2d 45, and not forbidden by the Eleventh Amendment. *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).[11] Here, it is clear that the Plaintiffs are suing solely for injunctive relief. Thus, the members of the Board of Trustees fall under this exception. Accordingly, the motion to dismiss the members of the Board of Trustees in their official capacities is DENIED.

Finally, Defendants ask this court to dismiss the Plaintiffs' supplemental state law claim alleging violations of Indiana Constitution Article I, Section IV. Supplemental jurisdiction may be declined when the court finds that the supplemental claim "raises a novel or complex issue of state law," 28 U.S.C. § 1367(c)(1), or "in exceptional circumstances" that there are "compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4). There has been only one case in Indiana which has addressed Article I, Section IV of the Indiana Constitution. *See Center Township of Marion County, v. Coe*, 572 N.E.2d 1350 (Ind.Ct.App.1991). Retaining this claim may require the Court to embark on an interpretation of Indiana's Constitution, virtually unguided by state court precedent. As a matter of comity, whether the acts in question violate Indiana's Constitution are best left to the province of Indiana's state court judges. Accordingly, the court declines supplemental jurisdiction over Plaintiffs' state law claim alleging violations of Indiana's Constitution and that claim is hereby DISMISSED without prejudice.

### CONCLUSION

In closing, the court acknowledges that this case has fundamental First Amendment liberties at risk. Both sides in this debate have strongly-held convictions

---

11. Defendants assert that the Seventh Circuit held in *Powers* that official capacity claims against state officials alleging purely injunctive relief under 42 U.S.C. § 1983 are not cognizable. This is simply incorrect. *Powers* specifically states "official-capacity suits against state officials that seek only injunctive relief are permitted by 42 U.S.C. § 1983" *Power*, 226 F.3d at 819.

about the propriety of the Play's performance at IPFW backed, they believe, by sound legal principles. In dismissing some of the plaintiffs, the Court acknowledges the sincerity of these plaintiffs' religious convictions and the offense they take to the Play's attack on their traditional Christian principles. However, "[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle,* 74 U.S. 506, 7 Wall. 506, 514, 19 L.Ed. 264 (1868). That is what this court is bound to do.

The Defendants' motion to dismiss for lack of jurisdiction is hereby GRANTED as to the twenty-one Indiana General Assembly members, Steve and Glenna Jehl, Ben and Rita Clemmer, Tom and Rosie O'Grady, Regina Martin, and Jon Olinger. The motion is DENIED as to Dan Linnemeier, Patricia Corbat and Francisco Carlos Avila. Defendants' alternative motion to dismiss for failure to state a claim for relief is also GRANTED as to Indiana University–Purdue University Fort Wayne and DENIED as to the members of the Board of Trustees of Purdue University in their official capacities. Plaintiffs' state law claim for violation of the Indiana Constitution is DISMISSED without PREJUDICE.