In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3183

Douglas Power, et al.,

Plaintiffs-Appellants,

v.

Phillip M. Summers, et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Indiana, Terre Haute Division.
No. TH97-188-C M/F--Larry J. McKinney, Judge.

Argued May 8, 2000--Decided September 5, 2000

 Before Bauer, Posner, and Diane P. Wood, Circuit
Judges.

 Posner, Circuit Judge.  Three professors at
Vincennes University, a public university in
Indiana, brought suit under 42 U.S.C. sec. 1983
against the president, other officials, and the
trustees of the university, charging retaliation
for the exercise of the plaintiffs' First
Amendment right of free speech and seeking both
injunctive relief and damages. The president is
sued in both his official and individual
capacity, the trustees only in their official
capacity. A suit against a state official in his
or her official capacity is a suit against the
state, and so is barred by the Eleventh Amendment
unless (so far as pertains to this case) the
state has waived its Eleventh Amendment immunity
from suit in federal court. The district court
dismissed the official-capacity claims as barred
by the Eleventh Amendment and then granted
summary judgment on the individual-capacity
claims on the ground that the alleged retaliation
did not amount to an adverse employment action
and so was not actionable.

 Since section 1983 does not authorize suits
against states (states not being "persons" within
the statute's meaning), Arizonans for Official
English v. Arizona, 520 U.S. 43, 69 (1997); Will
v. Michigan Dept. of State Police, 491 U.S. 58,
66 (1989), Higgins v. Mississippi, 217 F.3d 951,

953 (7th Cir. 2000), the district court should have dismissed the official-capacity claims before addressing the Eleventh Amendment defense, the sequence ordained by Vermont Agency of Natural Resources v. United States ex rel. Stevens, 120 S. Ct. 1858, 1865-66 (2000). Which is not to say that the court was wrong to think Vincennes University an arm of the state and thus protected from suit in federal court by the Eleventh Amendment. The university was created by an Indiana statute, two-thirds of its budget comes from the state and the rest from tuition, and nine of its fourteen trustees are appointed by the governor. Previous decisions have established that other Indiana state universities are state agencies for purposes of the Eleventh Amendment, Kashani v. Purdue University, 813 F.2d 843, 845 (7th Cir. 1987); Shelton v. Trustees of Indiana University, 891 F.2d 165, 166 (7th Cir. 1989), and the only differences to which the plaintiffs point us--that Vincennes alone has authority to receive funds from a county tax levy and that four of its trustees are required to be from the region of the state served by the university and in fact nine of the current trustees are from that region--do not come close to showing that Vincennes is really a local rather than a state agency. It appears that none of its budget is in fact funded by the county tax levy, and the fact that a state agency has a geographically limited jurisdiction does not make it a local agency. Osteen v. Henley, 13 F.3d 221, 223 (7th Cir. 1993); Fouche v. Jekyll Island-State Park Authority, 713 F.2d 1518, 1520-22 (11th Cir. 1983). The Tennessee Valley Authority is a federal agency even though it has a specific geographical domain. Vincennes University is a state agency with a local mission.

It is true that the statute creating it includes a very broad "sue and be sued" clause: the trustees shall be "capable of suing and being sued . . . in all courts and places whatsoever." Ind. Code sec. 23-13-18-1(b)(1). Read literally, this is consent to being sued in federal court. Yet similar language has been read not to create such consent. Atascadero State Hospital v. Scanlon 473 U.S. 234, 241 (1985); Huang v. Board of Governors, 902 F.2d 1134, 1138-39 and n. 4 (4th Cir. 1990). The statutory language that we quoted may be intended to mean only that the state agency can remove a suit against it to federal court (and thus consent to being sued in that court), which it couldn't do in the absence of a statutory waiver of sovereign immunity, Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 466-67 (1945); Estate of Porter v. Illinois, 36 F.2d 684, 690-91 (7th Cir. 1994); Silver v. Baggiano, 804 F.2d 1211, 1214-15 (11th Cir. 1986); compare In re Innes, 184 F.3d 1275, 1280

(10th Cir. 1999), or that, should it want to bring a suit in federal court, it can avoid an argument that since it could not be sued in that court, and therefore could not be subjected to a counterclaim (other than a setoff), see, e.g., Federal Savings & Loan Inc. Corp. v. Quinn, 419 F.2d 1014, 1017 (7th Cir. 1969), In re Monongahela Rye Liquors, Inc., 141 F.2d 864, 869 (3d Cir. 1944), it would not be proper to allow it to sue in federal court--that would give it an unfair advantage over the defendant. In re Creative Goldsmiths of Washington, D.C., Inc., 119 F.3d 1140, 1148 (4th Cir. 1997). But whether this is right does not matter here because the plaintiffs did not argue waiver in the district court and so the issue is--waived. Ryan v. Illinois Department of Children & Family Services, 185 F.3d 751, 758 (7th Cir. 1999); Merrill Tenant Council v. U.S. Dept. of Housing & Urban Development, 638 F.2d 1086, 1093-94 (7th Cir. 1981); Becker v. University of Nebraska, 191 F.3d 904, 909 n. 4 (8th Cir. 1999).

 Left are the individual-capacity claims against the university's president and other officials, and also the possibility that the plaintiffs, if they succeed in proving retaliation, can obtain injunctive relief against the university, since official-capacity suits against state officials that seek only injunctive relief are permitted by 42 U.S.C. sec. 1983, Will v. Michigan Dept. of State Police, supra, 491 U.S. at 71 n. 10, and not forbidden by the Eleventh Amendment. Ex Parte Young, 209 U.S. 123 (1908); Bethesda Lutheran Homes & Services, Inc. v. Leean, 122 F.3d 443, 444 (7th Cir. 1997). The simplest form of such relief would be an injunction forbidding-- retaliation. That might seem to add little to the First Amendment, which already prohibits (more precisely, has been interpreted to prohibit) retaliating against the exercise of one's First Amendment right of free speech. But such an injunction would at least add contempt to the other sanctions for violating the First Amendment. It is not uncommon for an injunction to repeat a statutory or equivalent prohibition, United States v. Miller, 588 F.2d 1256, 1261 (9th Cir. 1978); SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1103 (2d Cir. 1972), and this is proper relief, as the Supreme Court emphasized in McComb v. Jacksonville Paper Co., 336 U.S. 187, 191-92 (1949), in order to prevent the defendant from repeating his violation in slightly different form, unless the prohibition is so nebulous that a violation of the injunction could not be punished as a contempt of court. Swift v. United States, 196 U.S. 375, 401 (1905) (Holmes, J.); City of Mishawaka v. American Electric Power Co., 616 F.2d 976, 991 (7th Cir. 1980); see Fed. R. Civ. P. 65(d). The term "retaliation" is not

so vague that a defendant enjoined from retaliating against a person for exercising his right of free speech would not know what he could and could not do with reference to that person.

The plaintiffs want more than a simple injunction against retaliation. To see what more, we must turn to the facts they're alleging. For 1995, the trustees authorized a "catch-up" salary raise for the faculty. This was to be a discretionary, merit-based raise rather than an across-the-board raise, but sufficient funds were appropriated to enable an average raise of $1,000. The plaintiffs, although their performance ratings ranged from average to excellent, received only $400 apiece. They claim that this was because they were "outspoken" on issues of faculty salaries, and the defendants concede that these so-called "merit" raises were actually used to reward faculty who were combatting "dissension" and "divisiveness," that for purposes of appeal it must be assumed that the plaintiffs were speaking out on matters of public concern and so were exercising the right that the free-speech clause of the First Amendment confers on them, and that no judicial determination has been made about whether their outspokenness was a factor in their receiving raises so far below the average. The defendants argue that despite these meager raises the plaintiffs' salaries rose relative to the average salary in their division. But this means little in itself, since such a result could come about simply because higher-paid faculty members quit, thus lowering the average.

Because the merit raise was an addition to base salary, the below-average raise received by the plaintiffs not only reduced the fringe benefits they would have received had they gotten a higher raise, but will reduce their future salaries; for by being added to the base salary the amount of the merit raise will be paid in all future years to those faculty who were granted it. The plaintiffs want an injunction commanding the university to raise their base salary to what it would have been had they not been discriminated against on account of their outspokenness.

An injunction that is a simple order to pay is not within Ex parte Young's dispensation for injunctions to restrain unconstitutional conduct, Edelman v. Jordan, 415 U.S. 651, 666-69 (1974); Mercer v. Magnant, 40 F.3d 893, 898-99 (7th Cir. 1994), as that would set the Eleventh Amendment to naught by a verbal trick. But an injunction that, as in Graham v. Richardson, 403 U.S. 365 (1971), forbids an improper classification by the state is proper even if it has definite financial implications. Edelman v. Jordan, supra, 415 U.S.

at 667; Continental Insurance Co. v. Illinois Department of Transportation, 709 F.2d 471 (7th Cir. 1983). And so an injunction that orders a state employee who has been demoted because of his exercise of a federally protected right to be restored to his previous position is not barred by the Eleventh Amendment even though it imposes a salary obligation on the state. E.g., Elliott v. Hinds, 786 F.2d 298, 302 (7th Cir. 1986); Thomson v. Harmony, 65 F.3d 1314, 1321 (6th Cir. 1995); Dwyer v. Regan, 777 F.2d 825, 836 (2d Cir. 1985). That is a permissible characterization of what the plaintiffs are seeking here.

 All that remains to be considered is the district court's determination that because there was no adverse employment action, the plaintiffs' claim of retaliation cannot be maintained. There are two steps in this analysis: retaliation is not actionable in a suit under 42 U.S.C. sec. 1983 unless an adverse employment action is shown; the denial of a discretionary raise is not an adverse employment action. Both are in fact missteps. Not section 1983, but the federal statutes, such as Title VII of the Civil Rights Act of 1964, that forbid invidious discrimination in employment, limit their protection to victims of "adverse employment action," which is judicial shorthand (the term does not appear in the statutes themselves) for the fact that these statutes require the plaintiff to prove that the employer's action of which he is complaining altered the terms or conditions of his employment. Hunt v. City of Markham, No. 99-1331, 2000 WL 968540, at *4-5 (7th Cir. July 11, 2000). There is no similar limitation in section 1983, or the constitutional doctrines that it is a vehicle for enforcing. McDonnell v. Cisneros, 84 F.3d 256, 258-59 (7th Cir. 1996). They are not, of course, even limited to employment. Any deprivation under color of law that is likely to deter the exercise of free speech, whether by an employee or anyone else, is actionable, even something as trivial as making fun of an employee for bringing a birthday cake to the office to celebrate another employee's birthday, Bart v. Telford, 677 F.2d 622, 624 (7th Cir. 1982), if (an important qualification, emphasized in Bart, id. at 625) the circumstances are such as to make such a refusal an effective deterrent to the exercise of a fragile liberty. See, besides Bart, McGill v. Board of Education, 602 F.2d 774, 780 (7th Cir. 1979); Glass v. Dachel, 2 F.3d 733, 741 (7th Cir. 1993); Duran v. City of Douglas, 904 F.2d 1372, 1378 (9th Cir. 1990). What confused the district court is DeGuiseppe v. Village of Bellwood, 68 F.3d 187, 191 (7th Cir. 1995), where we said that an employee must demonstrate an adverse employment action in order to complain about retaliation for the exercise of First

Amendment rights. All we meant was that the action of which the employee is complaining must be sufficiently "adverse" to deter the exercise of those rights. That is plain from the further discussion of the issue in DeGuiseppe, explaining that "a campaign of petty harassment" and "even minor forms of retaliation," "diminished responsibility, or false accusations" can be actionable under the First Amendment. 68 F.3d at 192. See also Dahm v. Flynn, 60 F.3d 253, 257 (7th Cir. 1994). Vincennes University, which despite its grand name is only a two-year college, pays low salaries to its faculty and we certainly cannot say as a matter of law that denying a raise of several hundred dollars as punishment for speaking out is unlikely to deter the exercise of free speech; a tenure system does not select for boldness.

Even if an adverse employment action within the meaning of the antidiscrimination statutes were required in a section 1983 case (and, to repeat, it is not), it would not follow that the denial of a raise would not qualify as such an action merely because the raise was discretionary. This would be obvious if the basis for exercising such discretion to deny an individual a raise were race or sex. See, e.g., Riordan v. Kempiners, 831 F.2d 690, 695 (7th Cir. 1987); Dugan v. Ball State University, 815 F.2d 1132 (7th Cir. 1987). It is true that in Miller v. American Family Mutual Ins. Co., 203 F.3d 997, 1006 (7th Cir. 2000), we held that the denial of a bonus was not an adverse employment action within the meaning of Title VII. Since a bonus is like a raise, the defendants want us to rule that the denial of a raise cannot be an adverse employment action either. But as we explained in Hunt v. City of Markham, supra, there is a difference between a bonus and a raise. Bonuses generally are sporadic, irregular, unpredictable, and wholly discretionary on the part of the employer, while raises are normal and expected, if only to offset inflation, which while mild in the United States today is not negligible. The raise at issue here was a catch-up raise which, so far as appears, most of the faculty received, and while it was a one-time raise it had, unlike a bonus, continuing effects, because it was added to the recipients' base salary. We decline to hold as a matter of law that the denial of such a raise (or of the full raise that the plaintiffs could have expected had it not been for the defendants' retaliatory animus toward them) cannot be an adverse employment action--and we repeat that no such action need be shown in a suit under section 1983. There is after all a difference between placing all (but the tiniest) employers in the nation, most of which are private, under a comprehensive regime of antidiscrimination law,

and merely forbidding persons acting under color of state law to infringe constitutional rights.

 The district court's dismissal of the official-capacity claim is affirmed, but the dismissal of the other claims is reversed and the case remanded for further proceedings consistent with this opinion.

Affirmed in Part,
Reversed in Part,
and Remanded.