In the
United States Court of Appeals
For the Seventh Circuit

No. 01-3513

Robert H. Tice, et al.,

Plaintiffs-Appellants,

v.

American Airlines, Inc.,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 95 C 6890--Matthew F. Kennelly, Judge.

Argued February 22, 2002--Decided April 30, 2002


   Before Posner, Kanne, and Rovner, Circuit
Judges.

   Posner, Circuit Judge.  Arbitral boards
established pursuant to the Railway Labor
Act have exclusive jurisdiction to
resolve disputes over the application of
collective bargaining agreements in the
railroad and airline industries. Hawaiian
Airlines, Inc. v. Norris, 512 U.S. 246,
252-53 (1994). The plaintiffs in this
suit under the Age Discrimination in
Employment Act deny that their dispute
with American Airlines is over the
meaning of the collective bargaining
agreement between their union and the
airline, but the district judge disagreed
and dismissed the suit for want of
subject-matter jurisdiction.

   A valid regulation of the Federal
Aviation Administration forbids a person
to pilot a commercial aircraft after he
reaches his sixtieth birthday. The
plaintiffs are 14 American Airlines
pilots who, having reached age 60 and
thus become disqualified to pilot the
airline's planes, claim the right to
downgrade to the position of flight
officer. Some of the airline's aircraft
(rapidly being phased out) have three
pilots in the cockpit--the captain, the
first officer (copilot), and the flight
officer. The flight officer must (with
immaterial exceptions) be a pilot, but

his duties do not involve flying the airplane, but rather monitoring the fuel, electrical, and other systems of the plane. Apparently unique among U.S. airlines, American refuses to permit a captain--all the plaintiffs were captains before becoming disqualified to serve as captains or first officers--who has been disqualified as a pilot to downgrade to flight officer; instead he must retire. It is this refusal that the plaintiffs challenge as age discrimination.

The airline claims that it treats all disqualified captains alike. A captain disqualified from serving as a captain or first officer because he has reached the age of 60 is treated the same as a younger captain disqualified because of ill health or because he failed the airline's proficiency test for pilots. If so, still this would not be a defense if the airline had unjustifiably decreed disqualification based on age, but that is not what it has done; it has merely complied with a valid government regulation. If it allowed captains disqualified by reason of age to become flight officers, but not captains disqualified for other reasons, it would be discriminating in favor of captains disqualified by reason of age, and the age discrimination law does not require employers to discriminate against the young. Tice v. Lampert Yards, Inc., 761 F.2d 1210, 1217 (7th Cir. 1985); EEOC v. Sperry Corp., 852 F.2d 503, 509 (10th Cir. 1988); Parcinski v. Outlet Co., 673 F.2d 34, 37 (2d Cir. 1982); Williams v. General Motors Corp., 656 F.2d 120, 129 and n. 13 (5th Cir. 1981).

But the question for us is not whether there may be a violation of the age discrimination law lurking somewhere here; the airline's claim to treat all disqualified captains alike regardless of age is contested, and if it discriminates against captains disqualified by virtue of their age it is violating the law. Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 120-21 (1985). Rather, the question is whether the plaintiffs' suit is dependent on their preferred interpretation of the agreement, in which event they should be in arbitration; and the answer to that question is yes. The only basis on which the plaintiffs could be entitled to bump existing holders of the flight-officer positions is if the

collective bargaining agreement between the airline and its pilots' union entitles more senior pilots to bump less senior ones from those positions. In the absence of such a contractual provision, an employer would have no duty to give another job to an employee validly disqualified from holding his present job.

Not only the existence but also the scope of the entitlement depends on the collective bargaining agreement. One provision states that "all pilots are required to qualify in turn for the next higher pilot category." The airline contends that this provision establishes an "up or out" policy: a flight officer who cannot qualify for a higher position cannot remain in the cockpit. The plaintiffs qualify rather than reject this position, pointing to a provision which states that "a pilot will only be required to upgrade to captain one (1) time." They interpret this to mean that the fact that their age precludes them from ever upgrading from the flight officer's position which they seek to captain-- that is, the fact that they are disqualified from ever again serving as a captain--cannot be used to disqualify them from the flight officer's job, because they complied with the "up or out" provision once and for all when they qualified as captains. Having climbed the ladder once, they can return to the lowest rung even though they can neverreclimb. The airline argues, to the contrary, that the qualify-once provision is inapplicable to a case in which the pilot can never again serve as captain. It is one thing, the airline argues, for an eligible captain to bump a flight officer or first officer; when a captain's position opens up for him, he'll be entitled to it without having to requalify as a captain. It is another thing to let him bump the junior employee when he can never again become a captain.

This is a disagreement over the meaning of the collective bargaining agreement. The plaintiffs claim certain rights under it and the airline denies they have those rights. It is true as the plaintiffs point out that the agreement nowhere states in so many words that a permanently disqualified captain cannot bump a flight officer. But contracts, including collective bargaining

agreements, frequently contain implied terms. Consolidated Rail Corp. v. Railway Labor Executives' Ass'n, 491 U.S. 299, 311 (1989); Howard v. Weathers, 139 F.3d 553, 555 (7th Cir. 1998); Chicago & North Western Transportation Co. v. Railway Labor Executives' Ass'n, 908 F.2d 144, 154 (7th Cir. 1990) ("the practice had, in other words, ripened into a commitment, and thus had become a part of the collective bargaining agreement between the union and the railroad. Practices accompanied by assurances of continuation, express or implied but in either event likely to induce reliance, can create an implied obligation"); Brotherhood of Locomotive Engineers v. Springfield Terminal Ry., 210 F.3d 18, 33 (1st Cir. 2000); Bonnell/Tredegar Industries, Inc. v. NLRB, 46 F.3d 339, 344 (4th Cir. 1995). Whether a collective bargaining agreement contains such terms is a question of interpretation to be decided by arbitrators when arbitration is the designated method of resolving issues arising under the agreement. "Contracts have implied as well as express terms, and the authority of an arbitrator to interpret a collective bargaining contract includes the power to discover such terms." Ethyl Corp. v. United Steelworkers of America, AFL-CIO-CLC, 768 F.2d 180, 186 (7th Cir. 1985); see Northern Indiana Public Service Co. v. United Steelworkers of America AFL-CIO-CLC, 243 F.3d 345, 348 (7th Cir. 2001); International Brotherhood of Teamsters, Local Union No. 371 v. Logistics Support Group, 999 F.2d 227, 229-30 (7th Cir. 1993); Dreis & Krump Mfg. Co. v. International Ass'n of Machinists & Aerospace Workers, District No. 8, 802 F.2d 247, 253 (7th Cir. 1986).

The applicability of this principle to the present case is confirmed by reflecting on the character of the considerations that are relevant to determining these plaintiffs' rights under the collective bargaining agreement. The interpretation of a contract does not take place in a vacuum; it is not a purely semantic exercise; it has regard for the consequences of alternative interpretations, the parties being assumed to have intended something sensible by their contract. E.g., Rhode Island Charities Trust v. Engelhard Corp., 267 F.3d 3, 7 (1st Cir. 2001). That is why we have said that "to

interpret a contract or other document, it is not enough to have a command of the grammar, syntax, and vocabulary of the language in which the document is written. One must know something about the practical as well as the purely verbal context of the language to be interpreted." Beanstalk Group, Inc. v. AM General Corp., 283 F.3d 856, 860 (7th Cir. 2002). American argues that the flight officer's job is a kind of apprenticeship for actually flying the airplane, so it wants the job filled by pilots eligible to progress to the flying positions. True, an eligible captain who downgrades is not an apprentice. Still, since his eligibility makes it likely that he will someday again be flying the aircraft, it makes sense that he should stay in the cockpit rather than take a job on the ground; it should help him to maintain his proficiency. That is the sort of argument that arbitrators knowledgeable about the practices of the airline industry are in a better position to evaluate than a judge or jury in a suit under an unrelated federal statute. Gonzalez v. Southern Pacific Transportation Co., 773 F.2d 637, 645 (5th Cir. 1985). This insight lies behind the frequently stated proposition that labor arbitrators do not merely read the words of the collective bargaining agreement but administer the "common law of the shop," which is to say the set of practices ("course of dealing," in the lingo of ordinary contract law) that fill out those words and complete the definition of the parties' agreement sketched in the actual document. Consolidated Rail Corp. v. Railway Labor Executives' Ass'n, supra, 491 U.S. at 311-12; Transportation-Communication Employees Union v. Union Pacific R.R., 385 U.S. 157, 160-61, 162-63 (1966); Washington Teachers' Union Local No. 6, American Federation of Teachers, AFL-CIO v. Board of Education, 109 F.3d 774, 779 (D.C. Cir. 1997).

   The plaintiffs deny that the airline has a practice of refusing to allow any disqualified captain to hold the flight officer's job. They argue that only if disqualification is based on the FAA's age-60 rule is the captain refused permission to downgrade to flight officer. And nothing in the collective bargaining agreement authorizes such discrimination. If they are right, they

will prevail in the arbitration and be reinstated with backpay. Might they then seek additional relief under the age discrimination law? Their argument would be that the airline had violated that law by discriminating on grounds of age against captains applying for flight-officer positions. The airline would have denied them their normal seniority rights solely on the basis of their age. We do not see why such a suit could not lie. When an employee has both a contractual right by virtue of a collective bargaining agreement (or other employment contract), and a statutory right to be free from discrimination, "both rights have legally independent origins and are equally available to the aggrieved employee." Alexander v. Gardner-Denver Co., 415 U.S. 36, 52 (1974); Pryner v. Tractor Supply Co., 109 F.3d 354, 361, 364 (7th Cir. 1997); Viggiano v. Shenango China Division, 750 F.2d 276, 279-81 (3d Cir. 1984); Air Line Pilots Ass'n, Int'l v. Northwest Airlines, Inc., 627 F.2d 272, 277-78 (D.C. Cir. 1980). The plaintiffs could, moreover--as in fact they have done--institute such a suitwithout waiting for completion of the arbitral process, although the suit would have to be stayed pending that completion.

The analogy is to the doctrine of primary jurisdiction. When, in a suit based on a federal statute, a potentially dispositive issue arises that is within the exclusive jurisdiction of an administrative agency, the suit must be stayed while the parties resort to the agency for that resolution. As we explained in Arsberry v. Illinois, 244 F.3d 558, 563 (7th Cir. 2001) (citations omitted), the doctrine of primary jurisdiction, "in its central and original form, in which it is more illuminatingly described, however, as 'exclusive agency jurisdiction,' . . . applies only when, in a suit involving a regulated firm but not brought under the regulatory statute itself, an issue arises that is within the exclusive original jurisdiction of the regulatory agency to resolve, although the agency's resolution of it will usually be subject to judicial review. When such an issue arises, the suit must stop and the issue must be referred to the agency for resolution. If the agency's resolution of the issue does not dispose of the entire

case, the case can resume subject to judicial review of that resolution along whatever path governs review of the agency's decisions, whether back to the court in which the original case is pending or, if the statute governing review of the agency's decisions designates another court, to that court." Similarly, the suit by these plaintiffs for employment discrimination must be stayed because they have no possible age discrimination claim if it turns out that the collective bargaining agreement expressly or by implication makes all disqualified captains, regardless of age, ineligible to become flight officers and is applied in a nondiscriminatory fashion in accordance with its terms. And only the arbitral boards convened under the aegis of the Railway Labor Act have the authority to determine the rights conferred by a collective bargaining agreement in the airline industry.

We are mindful that in Brown v. Illinois Central R.R., 254 F.3d 654, 664, 667-68 (7th Cir. 2001), we said that if a particular interpretation of the collective bargaining agreement is potentially dispositive of the plaintiff's claim, the plaintiff cannot bring a separate federal suit but is remitted to arbitration as his exclusive remedy, while if the meaning of the collective bargaining agreement bears tangentially though materially on the issue in the federal suit, that suit can proceed. See also Schiltz v. Burlington Northern R.R., 115 F.3d 1407, 1415 (8th Cir. 1997). In either case, the suit must be stayed until the dispute over the agreement is resolved by the only body authorized to resolve such disputes, namely an arbitral panel. It follows that if the resolution of the dispute does not resolve the issues in the suit, the suit can resume.

We don't think the opinion in Brown meant anything different from this, despite the reference to potentially as distinct from actually dispositive arbitration. Brown was trying to avoid the arbitral route--improperly, because his claim depended critically on the resolution of a dispute over the meaning of the collective bargaining agreement, and as the court said there and we have said here, the arbitrators have exclusive jurisdiction over such disputes. Brown v.

Illinois Central R.R., supra, 254 F.3d at 658. The court added, consistently with our analysis here, that "the adjudication of Brown's ADA claim cannot go forward until Article 55 and the seniority provisions of the CBA are interpreted." Id. at 661 (emphasis added). The implication is that if Brown obtained a favorable interpretation from the arbitrators, he could reinstate his suit. Since it is obviously the intention of the plaintiffs in our case to proceed under the age discrimination law if they can, we think that rather than dismiss the present suit the district judge should have stayed it to await the outcome of arbitration in order to spare the parties the burden of a second litigation should the arbitrators fail to resolve the entire controversy. That is the normal procedure when an arbitrable issue arises in the course of a federal suit. See 9 U.S.C. sec. 3. As we have emphasized in a variety of contexts, district courts should retain jurisdiction over a suit that must be interrupted for reference of an issue to another forum rather than dismiss it if, should it be dismissed, there might later be grounds for reinstating it. E.g., Baltimore & Ohio Chicago Terminal R.R. v. Wisconsin Central Ltd., 154 F.3d 404, 407-08 (7th Cir. 1998); Richmond v. Chater, 94 F.3d 263, 267-68 (7th Cir. 1996); Evans Transportation Co. v. Scullin Steel Co., 693 F.2d 715, 717-18 (7th Cir. 1982); cf. Pizzo v. Bekin Van Lines Co., 258 F.3d 629, 634-36 (7th Cir. 2001); Goss Graphics Systems, Inc. v. DEV Industries, Inc., 267 F.3d 624, 626 (7th Cir. 2001).

The judgment is therefore modified to convert the dismissal of the plaintiffs' suit to a stay of the suit pending referral of the parties' dispute to arbitration, and the case remanded to the district court accordingly.