# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-2054

DR. GRACE FARRELL,

*Plaintiff-Appellant,*

v.

BUTLER UNIVERSITY,

*Defendant-Appellee.*

———————

**Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 02-0531-C B/S—Sarah Evans Barker, *Judge.***

———————

ARGUED JANUARY 4, 2005—DECIDED SEPTEMBER 1, 2005

———————

Before FLAUM, *Chief Judge*, and EVANS and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Dr. Grace Farrell, a tenured professor of English at Butler University ("Butler"), claimed sex discrimination under Title VII of the Civil Rights Act of 1964 § 701 *et seq.*, as amended, 42 U.S.C. § 2000(e). The issue before us is whether the district court erred by finding that no genuine issue of material fact existed for trial on either Dr. Farrell's disparate treatment or disparate impact claims. We affirm, and find that on Dr. Farrell's disparate treatment claim, she did not establish that Butler's stated nondiscriminatory reasons for its personnel decision were a pretext for unlawful discrimination. Furthermore, we find as to her disparate impact claim, that she failed to establish

that Butler's selection of recipients for the academic award at issue here had an adverse disparate impact on women on the basis of their gender.

## I.  BACKGROUND

Dr. Grace Farrell was hired by Butler in 1987 as a tenured full professor of English and served as the head of the English Department until 1989. When she resigned as head of the Department, she continued to earn the same salary as she had when she was head of the English Department, although non-administrative faculty at Butler traditionally earned less than those faculty members in administrative roles.

In 1996, in response to concerns about salary equity with respect to gender, Butler created a Faculty Compensation Task Force ("Task Force"). The primary purpose of the Task Force was to evaluate problems with gender inequities at Butler, with a particular focus on salary parity. At the conclusion of its review of salary data for male and female professors, the Task Force reported that male professors tended to have higher mean salaries than female professors at all rank levels. Among its many initiatives, the 1997 Task Force report recommended that Butler create and implement the Professional Excellence Program ("PEP") to reward professors who had been tenured full professors for at least five years and who demonstrated sustained excellence in scholarship, teaching and service.

Eligible Butler faculty were first able to apply for the PEP award in 2000. Dr. Farrell applied both in the inaugural year of the program and again in 2001. In both 2000 and 2001, Dr. Farrell was the only woman eligible in Butler's College of Liberal Arts and Sciences to apply, and indeed, was the only woman to do so.

For both years the PEP was awarded only to male professors—Paul Valliere, Professor of Religion and William

Neher, Professor of Speech & Communication in 2000, Stephen Perrill from the Biology Department, George Geib of the History Department, and Joseph Kirsch, a Professor of Chemistry, in 2001. When Dr. Farrell failed to receive the award for the second time in 2001, she filed a grievance before the faculty appeals committee and eventually filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). In her EEOC complaint, Dr. Farrell charged Butler with gender discrimination. Dr. Farrell ultimately filed a Title VII gender discrimination suit in the United States District Court for the Southern District of Indiana and now appeals the district court's summary judgment in favor of Butler.

## II. ANALYSIS

### A. Standard of Review

We review de novo a district court's grant of summary judgment. *Ozlowski v. Henderson*, 237 F.3d 837, 839 (7th Cir. 2001) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)). Summary judgment is properly granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When determining whether a genuine issue of material fact exists, we consider evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Material facts are facts that "might affect the outcome of the suit" under the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over material facts is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### B.  Disparate Treatment

Title VII prohibits employers from discriminating against employees on the basis of sex or gender. 42 U.S.C. § 2000e-2(a)(1). Claims of discrimination under Title VII for disparate treatment can be proven either through direct or indirect evidence. *O'Regan v. Arbitration Forms, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001). Given that Dr. Farrell does not provide any direct evidence of discrimination on the basis of gender, she must proceed under the *McDonnell Douglas* indirect burden-shifting method. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004).

Under the *McDonnell Douglas* scheme, the plaintiff bears the initial burden of establishing a prima facie case. *Id.* at 802. To state a prima facie case of "disparate treatment" gender discrimination under Title VII, a female plaintiff must show that she: (1) is a member of a protected class, (2) is performing her job satisfactorily, (3) suffered an adverse employment action, and (4) was treated less favorably than at least one similarly-situated male colleague. *Lim v. Trus. of Ind. Univ.*, 297 F.3d 575, 580 (7th Cir. 2002); *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1012 (7th Cir. 2000).

Once the plaintiff has established a prima facie case, the burden of production shifts to the defendant to provide a legitimate, nondiscriminatory reason for the decision. *McDonnell Douglas*, 411 U.S. at 802; *Paluck*, 221 F.3d at 1009. Once the defendant satisfies its burden, the burden shifts back to the plaintiff to show that the defendant's explanation was pretextual. *Paluck,* 221 F.3d at 1009. Pretext requires more than showing that the decision was "mistaken, ill considered or foolish, [and] so long as [the employer] honestly believed those reasons, pretext has not been shown." *Jordan v. Summers*, 205 F.3d 337, 343

(7th Cir. 2000). Pretext "means a dishonest explanation, a lie rather than an oddity or an error." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000).

On appeal, Butler argues that we need not undergo a *McDonnell Douglas* analysis because Dr. Farrell's allegations regarding the 2000 PEP award are untimely. However, this court has previously held that a plaintiff may base her suit on conduct outside of the statute of limitations if it would have been unreasonable to expect the plaintiff to sue before the statute of limitations passed on the alleged discriminatory conduct. *Galloway v. Gen. Motors Serv. Parts Operations*, 78 F.3d 1164, 1167 (7th Cir. 1996). In the present case, it would have been unreasonable for Dr. Farrell to sue Butler in 2000 when she was first passed up for the PEP award, since that was the first time that Butler gave the award. Moreover, it *is* reasonable that Dr. Farrell would have suspected Butler of discriminatory conduct when she had failed to receive the award twice, and both times the award had been given to a male professor.

We now proceed to a *McDonnell Douglas* analysis. First, we find that Dr. Farrell has established a prima facie case with respect to her claim of disparate treatment. Dr. Farrell, a woman, is a member of a protected class under Title VII. The record also shows that she was performing her job satisfactorily. However, the third element of the prima facie test, whether Dr. Farrell's failure to "win" the PEP award constituted an adverse employment action, remains contested. We have adopted a generous definition of the phrase "adverse employment action." *See Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003); *see also Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 691 (7th Cir. 2001). In some cases, it is apparent that an employee has suffered an adverse employment action, for example, "when an employee is fired, or suffers a reduction in benefits or pay." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). However, "adverse job action

is not limited solely to loss or reduction of pay or monetary benefits. It can encompass other forms of adversity as well." *Collins v. State of Ill.*, 830 F.2d 692, 703 (7th Cir. 1987).

Butler argues that the PEP award is not a raise, but a bonus. We have held that the denial of a raise qualifies as an adverse employment action, *Hunt v. City of Markham*, 219 F.3d 649, 654 (7th Cir. 2000), but that the denial of a bonus does not, *id.*; *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1006 (7th Cir. 2000). In *Hunt*, we distinguished bonuses from raises, noting that "bonuses generally are sporadic, irregular, unpredictable, and wholly discretionary on the part of the employer," while "[r]aises are the norm for workers who perform satisfactorily." *Hunt,* 219 F.3d at 654.

Therefore, for Dr. Farrell to state a prima facie case, it is both necessary and sufficient that the PEP award be deemed a raise rather than a bonus. The district court correctly noted that the PEP award does not fit cleanly into either *Hunt* category, but rather "straddles the two classifications." As the PEP award recognizes *excellence* in scholarship, teaching, and service, employees cannot expect to receive it as a matter of course. On the other hand, Butler announces PEP awards not in some "sporadic, irregular, unpredictable" fashion, but rather in a regular, annual presentation. Furthermore, the fact that a PEP award bestows upon its recipient a *permanent* increase in base salary strongly suggests that the award is a raise, not a bonus. *See Power v. Summers*, 226 F.3d 815, 821 (7th Cir. 2000) (finding that the "catch-up raise" at issue in this case was a raise and not a bonus because it had continuing effects when it was added to the recipients' base salary). In addition, under the unique facts of this program, an opportunity for abuse exists on the part of the employer if we held that the PEP program is a bonus. By holding that this program is indeed a bonus, we fear that we might give Butler a license to discriminate openly in its selection of

recipients for this program, knowing that an employee could not successfully establish her prima facie case under any circumstance. With all of these considerations in mind, on the balance, we agree with the district court's determination that the PEP award is best characterized as a raise. As all the requirements for a prima facie case are thus satisfied, we hold that Dr. Farrell has met her initial burden under *McDonnell Douglas.*[1]

Following Dr. Farrell's establishment of a prima facie case, the burden of production shifts to Butler to offer a legitimate, nondiscriminatory reason for not awarding the PEP to Dr. Farrell. Butler offered the following reasons for not giving the PEP award to Dr. Farrell. First, the 2000 and 2001 PEP Selection Committees determined that Dr. Farrell's overall records in the areas of teaching, scholarship and service were exceeded by other professors in the applicant pool. Second, the 2000 and 2001 PEP Selection Committees found Dr. Farrell's record to be weak in the area of service to the university.

In response, Dr. Farrell asserted that the reasons proffered by Butler were pretextual and that the PEP award was essentially meant to reward applicants with lifelong service to Butler (thereby specifically excluding her from consideration). Furthermore, Dr. Farrell asserted that the existence of an "old boys' club"—an informal exclusive network of male faculty members—provided conclusive evidence of discriminatory treatment. Dr. Farrell's evidence that an informal "old boys' club" exists at Butler amounts to a recommender's acknowledgment that he and the PEP

---

[1] We note our struggle with the determination of whether the PEP award was more similar to a raise or a bonus. We also find it ironic that the PEP program, created in response to a report noting gender inequity at Butler, has never been awarded to a woman in the two years the award was granted.

award candidate were lunch-time companions, one recommender's knowledge of a PEP award candidate's home life, and some coincidental overlap of a male faculty member's membership on the PEP award selection committee and his status as an award recipient. Without more substantial evidence, Dr. Farrell's assertions of an "old boys' club" fails to rise to a level that shows pretext.

Similarly, we find no evidence in the record supporting Dr. Farrell's claim that the PEP award was designed to reward lifelong service to Butler, thereby precluding her from serious consideration. The selection criteria for the PEP award included consideration of scholarship, teaching and service at Butler and were applied to all of the candidates. It is difficult to identify a more legitimate, nondiscriminatory reason for awarding the PEP to one recipient over another than adherence to the selection criteria for the award itself.

Furthermore Dr. Farrell asserts that her record of scholarship, teaching and service is "superior" to the records of the actual winners. However, Dr. Farrell's own opinion that her record supercedes that of the PEP award recipients is not enough in and of itself to establish pretext. In *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180 (7th Cir. 2002), we held that "evidence of the applicants' competing qualifications does not constitute evidence of pretext 'unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue.' " Although Dr. Farrell's qualifications are indeed very impressive,[2] these qualifications do not rise above the burden that *Millbrook* imposes. In fact, the record reveals a thorough and fair selection process; the selection

---

[2] Dr. Farrell's 2000 PEP application listed over eighteen published books, chapters, and essays that she authored.

committee diligently reviewed each application and held a meeting to discuss each applicant's qualifications. For example, the deposition testimony of all members of the 2000 PEP selection committee indicates that each selection committee member read the applicants' dossiers on his or her own time, and then met to discuss the applicants' dossiers, and to provide the names of their choices for the award. Also their testimony indicates that the committee looked for balance in the areas of teaching, service, and scholarship, and these were the same factors utilized by the 2001 committee. The 2000 PEP selection committee chairperson Shannon Lieb stated that in assessing candidates, the committee asked, "Is the person actively engaged in scholarship, are they good teachers, are they contributing service to the university." Def.'s Br. in Supp. of its Mot. for Summ. J. at 6 (quoting Lieb Dep. at 19). The deposition testimony also reflects that gender was not one of the factors that the 2000 or 2001 PEP selection committees considered in rendering the award. The 2001 selection committee made the assumption that the opportunities for Butler science faculty to publish were limited, and less than those Butler faculty in the humanities and this assumption was factored into their analysis.

As nonobjective as the selection criteria for the PEP award may have been, this circuit and others have been reluctant to review the merits of tenure decisions and other academic honors in the absence of clear discrimination. We have previously recognized that scholars are in the best position to make the highly subjective judgments related with the review of scholarship and university service. *See, e.g., Vanasco v. National-Louis Univ.*, 137 F.3d 962, 968 (7th Cir. 1998); *Zahorik v. Cornell Univ.*, 729 F.2d 85, 93 (2d Cir. 1984). In light of the foregoing, Dr. Farrell fails to carry her burden of showing that Butler's legitimate, nondiscriminatory reasons were pretextual.

## C.  Disparate Impact

Under a disparate impact theory, an employer is held liable when a facially neutral employment practice dispro-portionately impacts members of a legally protected group. *Reidt v. County of Trempealeau*, 975 F.2d 1336, 1340 (7th Cir. 1992) (citing *Dothard v. Rawlinson*, 433 U.S. 321, 329 (1977)). Specifically, Title VII prohibits "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *O'Regan v. Arbitration Forms, Inc.*, 246 F.3d 975, 986 (7th Cir. 2001) (internal citations omitted).

With regard to Dr. Farrell's disparate impact claim, Butler correctly points out that a Title VII plaintiff may not bring a claim in her lawsuit that she did not include in her EEOC charge. However, this Court has adopted a liberal standard for reviewing the scope of an EEOC charge and has held that "[a]ll claims of discrimination are cognizable that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 (7th Cir. 1985) (internal citations omitted). Dr. Farrell's statements, reflected in the EEOC's Charge of Discrimination and in Dr. Farrell's Charge Questionnaire, encompass a disparate impact complaint. In Dr. Farrell's Charge Questionnaire, she writes, "I believe that there is an inherent or deliberate bias against women faculty and, in this case, only two women from the entire faculty would have met the criteria for the award, yet many more men would have been eligible."

In order to advance a disparate impact claim, the plaintiff must first establish a prima facie case by proving by a preponderance of the evidence that the employment policy or practice had an adverse disparate impact on women on the basis of their gender. 42 U.S.C. § 2000(e)-2(k)(1)(A)(i); *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 985-87

(1988); *Scherr v. Woodland Sch. Cmty. Consol. Dist. No. 50*, 867 F.2d 974, 979 (7th Cir. 1988). The plaintiff must first "isolate and identify 'the specific employment practices that are allegedly responsible for any observed statistical disparities'", and second demonstrate causation by offering "statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotion because of their member-ship in protected group." *Bennett v. Roberts*, 295 F.3d 687, 698 (7th Cir. 2002) (citations omitted); *Vitug v. Multistate Tax Comm'n*, 88 F.3d 506, 513 (7th Cir. 1996).

Although Dr. Farrell identifies two practices which she argues have a disparate impact against women faculty, she fails to establish a prima facie case of disparate impact discrimination. Specifically, Dr. Farrell asserts that the eligibility requirements and the candidate evaluation methods for the PEP award have a disparate impact against women faculty members at Butler. With respect to the eligibility requirements, Dr. Farrell has failed to show that she was injured by Butler's employment practice. To have standing to bring a disparate impact claim, a plaintiff must show that she was personally injured by the defendant's alleged discriminatory practice. *Melendez v. Ill. Bell Tel. Co.*, 79 F.3d 661, 668 (7th Cir. 1996); *see also Carpenter v. Bd. of Regents of the Univ. of Wis. Sys.*, 728 F.2d 911, 915 (7th Cir. 1984) (affirming dismissal of disparate impact claim where plaintiff failed to show that the university's practice of considering candidates for tenure after seven years of service affected him personally). In this case, Dr. Farrell met the eligibility requirements for the PEP award, and the PEP selection committee duly considered her candidacy.[3]

_____

[3] In fact, if anything, the record reflects that the PEP selection committee was willing to be flexible in its eligibility requirements

(continued...)

Dr. Farrell also argues that the methods Butler used to evaluate the PEP applicants tended to favor male professors over female professors. However, Dr. Farrell's purported evidence, that the selection committee failed to consider her alternative and supplemental submissions regarding her teaching activities, hardly amounts to a disparate impact on women in general. Rather, these allegations are specific to Dr. Farrell and in fact, specific to her 2001 application. Given the singularity of the accusations, we find it too much of a stretch to say that the selection committee's procedures can be characterized as employment practices having a disparate impact on women.

---

[3] (...continued)
in order to accommodate Dr. Farrell's own personal circumstances. Part of the requirements for applying to the PEP award involved the candidate listing the previous five-year's worth of teaching and student evaluation summaries. However, the 2000 PEP Selection Committee Chairperson Lieb gave Dr. Farrell permission to submit a separate, uninterrupted five-year period for consideration, in addition to the previous five years. Chairperson Lieb gave Dr. Farrell permission to do this because the unmodified requirement would have forced Dr. Farrell to include two-and-a-half years of non-teaching time, including one year of fellowship and three semesters of sick leave.

## CONCLUSION

For the reasons stated above, we AFFIRM the district court's order granting summary judgment in favor of the defendant, Butler University.

FLAUM, *Chief Judge*, concurring in part and concurring in the judgment. Although I agree with the result reached by the majority and join its opinion with respect to plaintiff's disparate impact claim, I disagree with the Court's resolution of plaintiff's disparate treatment claim. I would affirm the district court's entry of summary judgment in favor of Butler on the ground that the denial of the PEP award is not an adverse employment action.

While I agree with the Court that the PEP award has characteristics of both a raise and a bonus, I conclude that it much more closely resembles a bonus, and that the denial of the award is not actionable under Title VII. *See Hunt v. City of Markham*, 219 F.3d 649, 654 (7th Cir. 2000); *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1006 (7th Cir. 2000). Unlike most raises, the PEP award was not the "norm for workers who perform satisfactorily." *Hunt*, 219 F.3d at 654. Rather, the PEP program was conceived as a way to reward a few distinguished faculty members "who had demonstrated sustained excellence in scholarship, teaching and service." The discretionary raise at issue in *Power v. Summers*, 226 F.3d 815 (7th Cir. 2000) is quite different from the PEP award and helps highlight the exceptional nature of the PEP award. Although the raise in *Summers* was discretionary, most faculty members received one; indeed, the university appropriated sufficient funds to grant each faculty member an average raise of $1,000. *Id.*

at 819. The PEP award, by contrast, was bestowed on only a few professors who were selected by a faculty committee after a rigorous application process. Neither the permanent nature of the salary increase nor the announcement of the PEP awards in a regular, annual presentation made the award a "normal and expected element" of a faculty member's salary or entitled faculty members to count on receiving the award. *Fyfe v. City of Fort Wayne*, 241 F.3d 597, 602 (7th Cir. 2002).

I would therefore affirm the grant of summary judgment in favor of Butler on the ground that plaintiff failed to establish a prima facie case of disparate treatment.

A true Copy:

      Teste:

                 _____
                 *Clerk of the United States Court of*
                     *Appeals for the Seventh Circuit*