In the

# United States Court of Appeals
## For the Seventh Circuit

No. 07-1518

LOUIS W. MILLER AND RICHARD J. ROYALS,

*Plaintiffs-Appellants*,

*v.*

AMERICAN AIRLINES, INC.,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 7756—**Sidney I. Schenkier**, *Magistrate Judge*.

ARGUED NOVEMBER 7, 2007—DECIDED MAY 5, 2008

Before POSNER, WOOD, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Plaintiffs Louis Miller and Richard Royals, ages eighty and seventy-five years old respectively, have sued their former employer, American Airlines, Inc. for failing to offer them a position with salary comparable to that of their previous job of flight engineer, which they held until May of 2002. Because the arbitrator determined that the collective bargaining agreement did not entitle the plaintiffs to positions of equal pay and the plaintiffs also have not shown that their age was the reason that they were offered inferior

positions, summary judgment was appropriate on their claims under the Age Discrimination in Employment Act ("ADEA"). Additionally, the plaintiffs cannot challenge the facial validity of the collective bargaining agreement because this claim was not properly raised in their charges filed with the Equal Employment Opportunity Commission ("EEOC"). Therefore, we affirm the grant of summary judgment in favor of American Airlines in its entirety.

## I. BACKGROUND

In the 1950s, the plaintiffs began working as flight engineers for American Airlines. American Airlines historically operated aircrafts that required three individuals in the cockpit—the captain, first officer, and the flight engineer. As technology became more advanced, there was less need for flight engineers to occupy the third seat in the cockpit. Additionally, airlines began hiring certified pilots, rather than flight engineers, to occupy the third seat. In 1964, American Airlines and its two employee unions entered into a collective bargaining agreement, the Tripartite Agreement ("Agreement"), that preserved the rights of then-current flight engineers to occupy the third seat of a three crew aircraft, but also recognized the right of American Airlines to no longer hire flight engineers. In the years following the agreement, American Airlines began to retire its three-crew aircraft, and in 1983, the Agreement was amended to reflect this change. The new provision, Supplement U, provides that:

> In the event a surplus of flight engineers exists, each flight engineer so affected, who is qualified or train-

able, will be guaranteed placement within the Company [American Airlines] . . . . At the time of his placement, the employee's monthly salary will be fixed based on the average of his earnings for the previous twelve (12) months as a flight engineer. If the employee's average monthly earnings as a flight engineer exceed the total monthly compensation actually earned in his new job, the employee will be paid such flight engineer's guaranteed monthly earnings. Such guarantee will be in effect until his normal flight engineer retirement date, and thereafter, his salary will be governed by the compensation plan applicable to the new position.

Supplement U was negotiated due to concerns that new technology would make flight engineers obsolete prior to the vesting of their pensions. The provision was designed to ensure that flight engineers would continue to receive the flight engineer rate of pay until the "normal flight engineer retirement date," which the American Airlines' Retirement Benefit Plan sets as age sixty-five.

In May 2002, American Airlines grounded the last of its three crew airplanes, and the plaintiffs and one other individual were the only three active flight engineers at the time. Prior to the grounding of the fleet, American Airlines sent the three remaining flight engineers a letter offering them staff assistant positions in its publications department, positions which paid $100,000 less than their salaries as flight engineers. At that time of this offer, plaintiff Royals was seventy years old and plaintiff Miller was seventy-five years old.

The plaintiffs filed charges with the EEOC against American Airlines, alleging that they were discriminated

against because of their age in violation of the ADEA, 29 U.S.C. § 621 *et seq.*, when the defendant did not offer them a position of comparable salary which, they maintained, was required by Supplement U of the Tripartite Agreement. The plaintiffs filed suit, and the district court initially found that the plaintiffs' claims involved a minor dispute over terms in a collective bargaining agreement and therefore were preempted by the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.* The district court then ordered the case stayed until the parties completed arbitration.

During arbitration, the plaintiffs filed a grievance with American Airlines, making essentially the same allegations that they made in their ADEA complaint. The arbitrator determined that the grievance was untimely because it was filed more than 90 days after the occurrence being grieved. The arbitrator further determined that American Airlines was not obligated by Supplement U to offer alternative employment at a salary comparable to that of a flight engineer. The American Airlines' Retirement Benefit Plan provides that the normal retirement age is sixty-five, and the arbitrator found that the plaintiffs were only guaranteed flight engineer pay until that age.

Following the arbitration decision, the district court granted the defendant's motion for summary judgment. The district court adopted the arbitrator's findings that Supplement U did not guarantee flight engineer pay past the age of sixty-five. It also found that the plaintiffs' claim that Supplement U was facially discriminatory fell outside the scope of their EEOC charge, and even if the merits could be reached, the claim failed because there was no evidence that Supplement U was motivated by a discriminatory purpose. The plaintiffs appeal.

## II. ANALYSIS

### A. Summary judgment was appropriate on the ADEA claim because there was no guarantee of comparable pay after the age of sixty-five.

We review the district court's grant of summary judgment *de novo*, viewing the record and all reasonable inferences drawn from it in the light most favorable to the party opposing the motion. *Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletic Dep't*, 510 F.3d 681, 687 (7th Cir. 2007). Summary judgment is appropriate only when the materials before the court demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail on their ADEA claim, the plaintiffs must prove that they were discriminated against in the terms and conditions of their employment because of their age, 29 U.S.C. § 623. *Hoffmann v. Primedia Special Interest Publ'ns.*, 217 F.3d 522, 525 (7th Cir. 2000) ("To succeed in an ADEA claim, a plaintiff must establish that he would not have received adverse treatment but for his employer's motive to discriminate on the basis of his age.") (internal citations omitted). The plaintiffs do not have to show, however, that their age was the sole motivation for the employer's decision; it is sufficient if age was a "determining factor" or a "but for" element in the decision. *Anderson v. Stauffer Chem. Co.*, 965 F.2d 397, 400 (7th Cir. 1992).

The plaintiffs' first claim can be characterized as an "as applied" challenge to Supplement U. The plaintiffs contend that American Airlines discriminated against them in the terms and conditions of their employment by failing to provide them with comparable pay as required by Supplement U of the Tripartite Agreement. Supple-

ment U states in relevant part that: "Such guarantee [of a flight engineer's guaranteed monthly earnings] will be in effect until his *normal flight engineer retirement date* and, thereafter, his salary will be governed by the compensation plan applicable to the new position." (Emphasis added.) In the arbitration proceedings, the arbitrator interpreted this sentence to mean that following the termination of the flight engineer positions, the collective bargaining agreement did not guarantee positions of comparable pay to the plaintiffs after they reached normal retirement age of sixty-five.

The district court deferred to the arbitrator's interpretation of this key language, correctly finding that resolution of the plaintiffs' ADEA claim is dependent upon the interpretation of Supplement U of the Agreement and therefore governed by the arbitration provisions of the RLA. The RLA provides for mandatory arbitration over labor disputes arising out of the interpretation of collective bargaining agreements in the railway and airline industries. *Hawaiian Airlines v. Norris*, 512 U.S. 246, 252-53 (1994). The RLA defines two categories of disputes: "major disputes" that "relate to 'the formation of collective [bargaining] agreements or efforts to secure them'" and "minor disputes" that "grow out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." *Id.* The plaintiffs' allegation that Supplement U requires a specific rate of pay after the age of sixty-five is dependent upon interpreting the phrase "normal flight engineer retirement date." Thus, this particular claim was subject to the arbitration provisions of the RLA, and we are bound by the arbitrator's interpretation that Supplement U does not obligate American Airlines to provide comparable pay after

employees have reached the normal flight engineer retirement date. *See Tice v. Am. Airlines, Inc.*, 288 F.3d 313, 318 (7th Cir. 2002) ("only the arbitral boards convened under the aegis of the Railway Labor Act have the authority to determine the rights conferred by a collective bargaining agreement in the airline industry").

This is not to suggest, however, that employees are always precluded from bringing an ADEA claim in federal court if the dispute involves a collective bargaining agreement. Generally, a plaintiff can file an ADEA lawsuit in federal court that may be in some way related to a collective bargaining agreement. However, if the success of the claim is dependent upon an interpretation of the collective bargaining agreement's terms, the court cannot consider it. *See Brown v. Illinois Cent. R.R.,* 254 F.3d 654, 664 (7th Cir. 2001) ("[T]he best way to harmonize these two statutes [the RLA and the ADA] is to allow a plaintiff employee to bring an ADA claim in federal court against his employer (even if his employment is governed by a collective bargaining agreement which is subject to the RLA), unless the resolution of his ADA claim requires the court to interpret the collective bargaining agreement's terms as a potentially dispositive matter."); *Tice*, 288 F.3d at 317 (providing that dismissal is appropriate where "a particular interpretation of the collective bargaining agreement is potentially dispositive of a the plaintiff's claim").

Here, the plaintiffs' claim was dependent upon the phrase "normal flight engineer retirement date" in Supplement U. The arbitrator's interpretation of this phrase in the collective bargaining agreement to mean that the plaintiffs were entitled to flight engineer pay only until the normal flight engineer retirement date and his sub-

sequent conclusion that such pay was not required to continue following this date eviscerated the plaintiffs' ADEA claims. *See Tice*, 288 F.3d at 317.

The plaintiffs contend that the arbitrator's determinations have no bearing on their ADEA claim because their claim is premised on the idea that Supplement U creates a "benefit" that is part of the employment relationship, a benefit that was withheld from the plaintiffs on the basis of their age. This issue, according to the plaintiffs, was not before the arbitrator nor was it considered by the district court. There is no evidence, however, that the plaintiffs had a contractual right to comparable pay after the age of sixty-five under Supplement U, or in their words, that they were entitled to a "benefit" created by virtue of the employment relationship. While "an employee has both a contractual right by virtue of a collective bargaining agreement (or other employment contract), and a statutory right to be free from discrimination," *Tice*, 288 F.3d at 317, the plaintiffs point to no language in Supplement U, express or implied, that can support their argument that American Airlines has discriminated against them by denying them positions of comparable pay. The express language of Supplement U, which guarantees flight engineer pay only until normal retirement age, provides that salary will then "be governed by the compensation plan applicable to the new position," language that is clearly contrary to their position. *See Miller v. Crystal Lake Park Dist.*, 47 F.3d 865, 867 (7th Cir. 1995) ("A 'legitimate claim of entitlement' is one that is legally enforceable—one based on statutes or regulations [or contracts] containing 'explicitly mandatory language' that links 'specified substantive predicates' to prescribed outcomes.") (internal citations omitted); *Hohmeier v. Leyden*

*Cmty. High Sch. Dist. 212*, 954 F.2d 461, 464 (7th Cir. 1992) ("Property interests in employment may be created by express or implied contracts, municipal ordinances or state laws."). Absent express language guaranteeing positions of comparable pay, "an employer [has] no duty [under the ADEA] to give another job to an employee validly disqualified from holding his present job." *Tice,* 288 F.3d at 315. Accordingly, we find that summary judgment was appropriate on the plaintiffs' "as applied" challenge to Supplement U.

### B. The plaintiffs' facial discrimination claim was not properly alleged in their EEOC charges.

Assuming *arguendo* that we can reach the issue of whether Supplement U is facially discriminatory since, unlike the "as applied" challenge, the arbitrator's interpretation of Supplement U is not necessarily dispositive of a facial challenge to this provision, *see Brown*, 254 F.3d at 664, the plaintiffs' facial challenge to Supplement U is still not properly before the court. A plaintiff generally cannot bring a claim in an ADEA lawsuit that was not alleged in the EEOC charge, and, while not a jurisdictional requirement, it is a prerequisite with which a plaintiff must comply before filing suit. *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). This requirement is to ensure that the employer has notice about the particular challenged conduct and provides an opportunity for settlement of the dispute. *Id.* (citations omitted). A plaintiff, however, may proceed on a claim not explicitly mentioned in his EEOC charge "if the claim is like or reasonably related to the EEOC charges, and the claim in the complaint reasonably could be expected to grow out of an EEOC investigation of the charge." *Id.* (*citing Peters*

*v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 551 (7th Cir. 2002) (internal quotations and citations omitted)). At the very least, the claims should involve the same conduct and implicate the same individuals in order to be considered "reasonably related" to the allegations in the EEOC complaint. *See Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202-03 (7th Cir. 1996).

Generally, we apply a liberal standard in determining if new claims are reasonably related to those claims mentioned in the EEOC charge. *Farrell v. Butler Univ.*, 421 F.3d 609, 616 (7th Cir. 2005). Here, the plaintiffs checked the ADEA box on their EEOC charge and stated that they were "subjected to different terms and conditions of employment" because they were "not offered a position with a comparable salary as required by the Tri-Partite Agreement." It is true that their claim that the Tripartite Agreement is facially discriminatory involves the same parties and the same facts as the other claim, and the plaintiffs checked the relevant box. *See Cheek,* 97 F.3d at 200. Nevertheless, their argument that the Tripartite Agreement *requires* that they be given positions of comparable pay and they were denied these positions because they were "beyond normal retirement age" conveys that at most, the plaintiffs are alleging that Supplement U is being applied in a disparate manner. To now challenge Supplement U as facially discriminatory, which is a much broader claim than that alleged in the EEOC charge, is also inconsistent with the plaintiffs' allegations that American Airlines failed to do something that Supplement U required. *Cf. Farrell*, 421 F.3d at 616 (finding that plaintiff's statements in her EEOC charge encompassed a claim of disparate impact where she stated "I believe that there is an inherent or deliberate

bias against women faculty and, in this case, only two women from the entire faculty would have met the criteria for the award, yet many more men would have been eligible."). To allow the plaintiffs to proceed on their facial challenge to Supplement U would take the "reasonably related" requirement much further than intended.

Additionally, the allegations in the plaintiffs' EEOC charges were not enough to put American Airlines on notice that the plaintiffs were planning to lodge a facial challenge against Supplement U. *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005) (the rule that a plaintiff may bring only those claims in her EEOC charge is "meant both to give the EEOC and employer an opportunity to settle the dispute and to give the employer fair notice of the conduct about which the employee is complaining."). In their respective EEOC charges, the plaintiffs state, very generally, that they were subjected to different terms and conditions of employment based on age. They now seek to use this language as an opening to pursue a legal theory that is certainly related, but not foreseeable from the allegations made in the charge. *See, e.g., Faibisch v. Univ. of Minn.*, 304 F.3d 797, 803 (8th Cir. 2002) (stating that a plaintiff cannot make conclusory statements of discrimination in her EEOC charge and then file suit on whatever facts or legal theory she may later decide upon). The EEOC charges filed by the plaintiffs allege behavior that is considerably more narrow than what the plaintiffs assert here; there is no notice to American Airlines that it may have to defend Supplement U against a facial challenge. Therefore, we find that the plaintiffs' claim that Supplement U was facially discriminatory was not properly alleged in the EEOC charge, and we need not reach the merits of this argument.

### III.  CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment in favor of American Airlines is AFFIRMED.